CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 0 9 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 7:07-cr-00003 |
| | ) | (Civil Action No. 7:10-cv-80225) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| LETTY MELLOR, | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The defendant is serving a sixty-five month term of confinement for her participation in a conspiracy to steal and use credit card information and to commit aggravated identity theft. The government filed a motion to dismiss, and the defendant responded, making the matter ripe for consideration. Upon review of the record, the court finds that the motion to dismiss must be granted.

## I.   **Background**

The facts underlying this case arise from the federal prosecution of an identity-theft ring operating in Roanoke, Virginia. The government's case centered upon the actions of four conspirators: Mario Rojas, Julio Mendez, Landy Diaz, and Diaz's wife, Letty Mellor ("Mellor" or the "petitioner"). Beginning in the summer of 2005, Rojas and Diaz began processing fraudulent credit card transactions using the credit card equipment located in a jewelry store owned by Rojas. When their activity began attracting suspicion to Rojas' store from financial institutions, Diaz procured a handheld "skimming" device that could be used to copy credit card information simply by swiping the card through the device. The two men agreed that, instead of copying the credit card information of customers at Rojas' store, they would enlist the aid of

waiters at local restaurants, who had ample opportunity to skim credit cards while processing their customers' payments.

One of the waiters to use the device was Julio Mendez, a server at the Rancho Viejo restaurant in Daleville, Virginia, who skimmed fifty or sixty credit card numbers onto the device over the month of August, 2006. Mendez returned the skimming device to Rojas, who passed it along to Diaz. Diaz, in turn, procured counterfeit credit cards that were encoded with the skimmed information. Rojas and Diaz then made multiple purchases with the counterfeit cards.

The skimming device was also used by Mellor, who worked as a server at the Texas Steakhouse and Saloon in Roanoke, Virginia, between May and August, 2006. During that time, Mellor used the device to skim information from the credit cards of over forty of her customers. After she returned the device to her husband, the credit card information that Mellor stole from her customers was also used to manufacture counterfeit credit cards. Moreover, in the fall of 2006, Mellor took a job as a cashier in the jewelry department at Sears. While she worked there, she used several counterfeit credit cards—encoded with actual credit card information but bearing fictitious names—to make fraudulent purchases of jewelry and other goods.

Eventually, both Mellor and Diaz were caught on camera using counterfeit cards. On September 22, 2006, the police put out a public notice for their arrest. The same day, both Mellor and Diaz left Roanoke for Orlando, Florida, where they were arrested four months later. A subsequent search of their residence uncovered numerous counterfeit credit cards, lists of credit card numbers belonging to other individuals, and a computer associated with the username "Letty Mellor" that contained numerous technical articles relating to credit card security.

On June 21, 2007, a federal grand jury returned an eight-count superseding indictment

2

charging Mellor and Diaz with a scheme to defraud individuals by stealing their credit and debit card numbers and producing unauthorized access devices. The first four counts of the indictment charged both Mellor and Diaz with conspiracy and the use and possession of unauthorized access devices, while counts Five, Six, and Seven charged both Mellor and Diaz with aggravated identity theft, in violation of 18 U.S.C. § 1028(A)(1). The eighth count contained a forfeiture notice.

Although Diaz pled guilty to one of the charges against him, each of the charges against Mellor went to trial. Over the course of the trial, the government introduced evidence to prove the foregoing facts. Mellor also stipulated to the facts of the government's Exhibits 1 and 2, which were entered into evidence. Exhibit 1 relates that each of forty-three named individuals on different occasions between June and August of 2006 "ate a meal at the Texas Steakhouse and Saloon Restaurant located on Valley View Boulevard in Roanoke, Virginia," "paid for the meal by giving the waitress, Letty Mellor" his or her credit card, and that "[p]rior to leaving the restaurant, the waitress returned [the] credit card." Exhibit 2 lists the names of twenty-one Rancho Viejo customers whose credit card information was skimmed by Julio Mendez. The government also introduced copies of the signed receipts for several of the meal purchases at the Texas Steakhouse and Saloon that were made by the listed individuals. Each receipt designates "Letty M." as the server.

The jury also heard testimony from several of the individuals listed in Exhibit 1 that corroborated the stipulations in the exhibits. In addition, the government introduced testimony from David Butler, the General Manager at the Texas Steakhouse and Saloon, that the credit card information had been stolen from customers whom Mellor had served. Finally, the jury heard

testimony from Heather Hinkle, the Loss Prevention Manager for the Sears at which Mellor worked as a cashier, who testified that Mellor had generated multi-thousand dollar "charge backs" using credit card numbers that had been stolen from the Rancho Viejo customers listed in Exhibit 2.

On the third day of trial, the jury found Mellor guilty on each charge. Mellor was sentenced on February 22, 2008. At her sentencing, the court reasoned that the individual account holders who were victims of Mellor's identity theft should be considered legal victims for sentencing purposes, despite the fact that they had been reimbursed by their financial institutions. The court accordingly applied a four point enhancement under § 2B1.1(b)(2)(B) of the United States Sentencing Guidelines to its calculations of Mellor's sentence. Mellor's counsel did not object to this calculation.

Mellor timely appealed her conviction to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). In her appellate brief, Mellor argued only that the evidence was insufficient to support her convictions. Despite the fact that the Supreme Court handed down its decision in <u>Flores-Figueroa v. United States</u>, 129 S. Ct. 1886 (2009), before the Fourth Circuit had ruled on Mellor's appeal, counsel for Mellor did not seek to supplement her appellate brief to reflect the ruling in that case. The Fourth Circuit affirmed her convictions in an opinion dated November 25, 2009.

On January 26, 2010, Mellor timely filed a pro se motion pursuant to 28 U.S.C. § 2255, claiming that she is entitled to relief on the following grounds: (1) that her convictions of aggravated identity theft must be overturned in light of <u>Flores-Figueroa</u>; (2) that her trial counsel was unconstitutionally ineffective in failing to contest the government's calculation of victims

for sentencing purposes under U.S.S.G. § 2B1.1(b)(2); and (3) that her appellate counsel was unconstitutionally ineffective in failing to seek to supplement her brief to reflect the Flores-Figueroa ruling and in failing to contest the sentencing court's victim calculation on appeal.

## II.    **Standard of Review**

To state a claim for relief under § 2255, a federal defendant must prove that one of the following occurred: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The court must hold pleadings filed by a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The requirement of liberal construction does not mean, however, that the court can ignore a clear failure in the pleading to "allege anything that remotely suggests a factual basis for the claim." Weller v. Department of Social Servs., 901 F.2d 387, 391 (4th Cir. 1990). Similarly, "judges are not . . . required to construct a [pro se] party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993). Likewise, the court is not required to "attempt[] to divine the point" the litigant seeks to make about the specific facet of the criminal proceedings that he challenges. Id. Where the petitioner's motion, when viewed against the record, does not state a claim for relief, the court should summarily dismiss the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. **Discussion**

#### A. Actual Innocence under Flores-Figueroa

In Flores-Figueroa, the Supreme Court held that, to support a conviction for aggravated identity theft under § 1028A(a)(1), the government must show that "the defendant knew that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'" 129 S.Ct. at 1886. This holding abrogated the previously-controlling authority in the Fourth Circuit, United States v. Montejo, 442 F.3d 213 (4th Cir. 2006), which had held that the prosecution need not prove that the defendant knew that the identification actually belonged to another person. The parties do not dispute the fact that Flores-Figueroa announced a new rule of substantive criminal law and is therefore retroactively-applicable to final convictions. See United States v. Berry, 369 Fed. Appx. 500, 502 (4th Cir. 2010); United States v. Venancio-Dominguez, 660 F. Supp. 2d 717, 721 (E.D. Va. 2009).

Because Mellor chose not to argue in her direct appeal that § 1028A(a)(1) required proof that she knew the stolen information belonged to another person, her claim is procedurally defaulted. Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citing Murray v. Carrier, 477 U.S. 478, 485, 496 (1986)).

The cause and prejudice standard requires the petitioner to show not only that "some objective factor external to the defense" impeded her efforts to raise the issue on direct review, Coleman v. Thompson, 501 U.S. 722, 753 (1992), but also that the error she alleges "worked to

6

his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). A

habeas petitioner cannot establish cause for her failure to raise an issue on direct appeal if the

reason for her failure was that it would have been futile for her to do so under then-existing

precedent: "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to

that particular court at that particular time." Bousley, 523 U.S. at 623 (quotations omitted). Nor

does a subsequent court decision demonstrate cause for a petitioner's default unless the

procedurally defaulted claim "is so novel that its legal basis was not reasonably available to

counsel." Reed v. Ross, 468 U.S. 1, 16 (1984); Williams v. French, 146 F.3d 203, 209 (4th Cir.

1998). By the time of Mellor's appeal, three Circuit Courts had held that § 1028A(a)(1) required

proof of the defendant's knowledge that the identification belonged to another person. See

United States v. Godin, 534 F.3d 51 (1st Cir. 2008); United States v. Miranda-Lopez, 532 F.3d

1034 (9th Cir. 2008); United States v. Villanueva-Sotelo, 515 F.3d 1234 (D.C. Cir. 2008). As a

result, Mellor cannot establish cause for her default, even though Montejo was the controlling

authority at the time of Mellor's direct appeal.[1]

Her claim may still be reviewed in a habeas proceeding, however, if she can establish that

she is the "victim[] of a fundamental miscarriage of justice," such that "a constitutional violation

has probably resulted in the conviction of one who is actually innocent." Carrier, 477 U.S. at

495-96. Under Bousley, the actual innocence exception to the procedural default bar applies

when a post-conviction change in the substantive law potentially shows that the petitioner was

---

[1] Mellor does not claim that her counsel's alleged ineffective assistance establishes cause for her default under Coleman v. Thompson, 501 U.S. 722, 753-54 (1991). The court notes in passing, however, that her counsel's failure to supplement her brief on direct appeal cannot establish cause for Mellor's default, because it did not constitute unconstitutionally ineffective assistance of counsel. See infra at III.B.

convicted for conduct that the law does not criminalize. 523 U.S. at 623. To establish actual innocence, Mellor must demonstrate that, "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted [her]." Schlup v. Delo, 513 U.S. 298, 327-28 (1995) (citation omitted). As the Supreme Court has underscored, "actual innocence means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

Mellor claims that she is actually innocent of aggravated identity theft under § 1028A(a)(1). Arguing that credit card numbers are not always paired with an actual person because "the string of 15 or 16 digits" can represent a corporate or gift card, Mellor claims that the government failed to produce evidence that was sufficient for a reasonable juror to have concluded that Mellor knew the stolen credit card information belonged to another person.

The court cannot agree. First of all, the Flores-Figueroa Court simply explained that the adjective "knowingly" in § 1028A(a)(1) applies to the phrase "another person"; the Court did not purport to define the meaning of the term "person" as used in the statute. See United States v. Maciel-Alcala, --- F.3d ---, 2010 WL 2836992, at *2 (9th Cir. 2010) (determining that Flores-Figueroa does not require the government to prove that the defendant knew that the information he was using belonged to a person who was alive). Flores-Figueroa does not by itself, therefore, preclude the application of the term "person" in § 1028A to legal "persons" such as corporations. See United States v. Hilton, 2010 WL 2926055, slip op., at *3 (W.D. N.C. 2010) (holding that § 1028A "criminalizes the unlawful use of the means of identification of another person, regardless of whether the stolen identification is of a natural or a corporate person.").

Moreover, even assuming that the term "person" in § 1028A does not encompass corporate "persons" and applies only to flesh-and-blood natural persons, Mellor's argument must

8

still fail. First, there is no reason to suggest that an access device such as a gift card or corporate credit card that is carried by an individual is not "a means of identification" of the natural person who is authorized to use it. See 18 U.S.C. § 1028A(a)(1). The information on any personal credit card is a "means of identification" for the cardholder only inasmuch as it gives the cardholder "access" to particular funds or accounts. 18 U.S.C. §§ 1028(d)(7)(D) and 1029(e)(1). Because a gift card or corporate credit card functions in exactly the same manner—i.e., it identifies the cardholder as someone with authorized access to the gift or corporate account—it is well within the statutory language to conclude that such a card is also "a means of identification of another person." 18 U.S.C. § 1028A(a)(1).[2]

Put another way, an access device is, for § 1028A purposes, a "means of identification" that is equivalent to a signature on a check. See 18 U.S.C. §§ 1028(d)(7)(A) and (B) (equating a "name" and an "access device" as "means of identification"). Making unauthorized use of an access device is itself, therefore, the equivalent of making unauthorized use of the signature of a natural person on a check. As a result, the unauthorized use of an access device that is linked to corporate funds merits the same treatment given to the unauthorized use of a personal signature on a check that is linked to a corporate account; namely, a conviction under § 1028A. See United States v. Cook, 336 Fed. Appx. 875, 877 (11th Cir. 2009) (upholding a conviction under § 1028A where the defendant had used fraudulent corporate checks and signed them with a forged

_____

[2]In other words, a corporate credit card is properly viewed as a "means of identification" of a natural person rather than of a corporate person simply because of the fact that a corporation does not carry credit cards around in its pocket. Access devices can give access to funds only to natural persons who are authorized to draw on the account, regardless of whether the linked account is corporate or personal in nature. See United States v. Cook, 336 Fed. Appx. 875, 877 (11th Cir. 2009) (upholding a conviction under § 1028A where the defendant had used fraudulent corporate checks and signed them with a forged signature of the payor who was authorized to draw on the corporate account).

signature of the payor who was authorized to draw on the corporate account); United States v. Johnson, 261 Fed. Appx. 611, 613-14 (4th Cir. 2008) (rejecting the defendant's argument that § 1028A was limited to the theft of identifying information of natural persons rather than companies).

In any event, the evidence adduced by the parties at trial establishes without doubt that reasonable jurors could have found that Mellor knew that the access device information she stole actually belonged to other natural persons. Generally, "[a] person acts knowingly with respect to a material element of an offense when[,] if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist." Model Penal Code § 2.02(2)(b)(i). See also United States v. Bailey, 444 U.S. 394, 403-04 (1980) (adopting the Model Penal Code's definition of "knowingly" with regard to the result of the defendant's conduct); United States v. Georgia, 279 F.3d 384, 390 (6th Cir. 2002) (looking to the Model Penal Code to define "knowingly" as used in the United States Sentencing Guidelines); United States v. Ladish Malting Co., 135 F.3d 484, 487 (7th Cir. 1998) (looking to the Model Penal Code to determine a mens rea corresponding to the term "willfully"). Further, "the government can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person." United States v. Gomez-Castro, 605 F.3d 1245, 1249 (11th Cir. 2010).

The evidence at trial demonstrated Mellor's modus operandi to a nicety. After finishing their fare, customers at the Texas Steakhouse and Saloon gave Mellor, their server, credit or debit cards to pay for their meal. Mellor literally took the cards from the hands of her customers, and, as she was walking away from the table toward the register, swiped the cards through the

skimming device that she had stored in her serving apron. She then charged the customers' meals to their cards, printed the receipts, and returned the cards and receipts to the customers for their signature. Not only did the evidence at trial include testimony from the affected individuals as well as multiple receipts showing that "Letty M." was the server who charged cards that later were compromised, but Mellor actually stipulated to the fact that she was the server for each of the forty-three individuals who ate at Texas Steakhouse and Saloon and afterwards found their credit card information to have been compromised. Not one of the forty-three compromised cards was a corporate or gift card.

The jury also heard testimony from Ms. Hinkle, the Loss Prevention Manager of Sears, who testified that Mellor had generated several "charge backs." In connection with this testimony, the government introduced evidence that several of the transactions involved Mellor's use—under a false name—of credit card information that had been stolen from Rancho Viejo customers in a scheme exactly parallel to Mellor's thievery at the Texas Steakhouse and Saloon. Again, not a single credit or debit card of which Mellor was convicted of stealing and using without authorization was associated with a corporate or gift account.

Under these circumstances, the court is constrained to conclude that Mellor has failed to demonstrate that "it is more likely than not that no reasonable juror would have convicted [her]," Schlup, 513 U.S. at 327, even if the court had given the instruction mandated by Flores-Figueroa.[3] Indeed, as the Flores-Figueroa Court itself observed,

---

[3] It is worth noting that the court did not explicitly instruct the jury that the government did not need to prove that the defendant knew that the identification actually belonged to a person. Instead, the court simply told the jury that the government must prove "that the defendant knowingly possessed without lawful authority, a means of identification of another person." Compare United States v. Giannone, 360 Fed. Appx. 473, 476 (4th Cir. 2010) (unpublished) (upholding a pre-Flores-Figueroa conviction under § 1028A even though the trial judge had explicitly instructed the jury that the government need not prove that the defendant knew that the stolen information belonged

in the classic case of identity theft, intent is generally not difficult to prove. For example, where a defendant has used another person's identification information to get access to that person's bank account, the Government can prove knowledge with little difficulty. The same is true when the defendant has gone through someone else's trash to find discarded credit card and bank statements, or pretends to be from the victim's bank and requests personal identifying information.

129 S. Ct. at 1892. Given that Flores-Figueroa expressly assumed that it would be easy to prove

that a dumpster-diving defendant knew that the stolen identification belonged to another person,

it is apparent that this task should be equally undemanding with respect to a defendant who has

literally stolen credit card information from the hands of another person.

Not surprisingly, other courts that have retroactively applied Flores-Figueroa in similar

circumstances have come to the same conclusion. The Fourth Circuit, for example, has held that

a defendant did not "credibly assert[] his legal innocence" under Flores-Figueroa when he

admitted to using a skimming device to steal credit card numbers and was arrested with

counterfeit cards onto which the same stolen numbers had been re-encoded. United States v.

Agyepong, 2010 WL 2852653, at *2 (4th Cir. 2010) (unpublished). The Fourth Circuit has also

held that the evidence "clearly demonstrate[d]" that the defendant knew that stolen debit card

numbers belonged to other persons when he sold the numbers online along with the names of the

associated account holders. United States v. Giannone, 360 Fed. Appx. 473, 476 (4th Cir. 2010)

(unpublished). The Court therefore upheld the defendant's conviction, despite the fact that the

trial judge had instructed the jury that the government need not prove that the defendant knew

that the stolen information belonged to other persons. Id. See also United States v. Santana, 361

Fed. Appx. 541, 542-43 (4th Cir. 2010) (unpublished) (evidence was sufficient to infer

_____

to other persons).

knowledge where the crux of the defendant's scheme was to steal and sell identities of actual people and there was circumstantial evidence that the identification documents were sold at a premium); United States v. Singh, 364 Fed. Appx. 1, 2 (4th Cir. 2010) (unpublished) (evidence was sufficient to infer the requisite knowledge where the defendant had stipulated that the birth certificate he had used belonged to another person); United States v. Holmes, 595 F.3d 1255, 1258 (11th Cir. 2010) (evidence was sufficient where the defendant was willing to subject the victim's name and social security number to repeated government scrutiny, using them to obtain a driver's license, a line of credit, and passport); United States v. Carrion-Brito, 362 Fed. Appx. 267, 273 (3d Cir. 2010) (evidence was sufficient where the defendant purchased the victim's name from the victim himself).

Most of the post-Flores-Figueroa cases in which courts have vacated § 1028A convictions are distinguishable from the case at bar in that they did not involve any evidence that the defendants had taken the identifying information from the physical person of the rightful owner. For example, the Court in United States v. Tureseo, 566 F.3d 77 (2d Cir. 2009), vacated a conviction of identity theft on direct appeal, because there was no evidence that the defendant knew or had ever met the victim whose identity documents he was using. The Court therefore held that there was insufficient evidence to infer that the defendant knew that the identification documents belonged to another person. Id. at 82-83. Similarly, the Court in United States v. Gaspar, 344 F. App'x 541 (11th Cir. 2009), vacated a conviction under § 1028A where the defendant had purchased the birth certificate of the victim from a co-worker. Noting that there was no evidence that the defendant had talked with the victim, the Court held that it could not be inferred that the defendant knew the identification belonged to a real person simply from the fact

that the defendant would have preferred that the identification was real in order for the document to be better able to withstand governmental scrutiny. Id. at 546-47. See also Soto v. United States, 2010 WL 148235, at *2 (S.D. Fla. 2010) (same).

These cases are clearly distinguishable from the case at bar, because there is ample evidence that Mellor herself took the credit card information directly from individual customers while serving them at the Texas Steakhouse and Saloon. The concern occasioned by the presence of middlemen in the cases cited above is simply not an issue in this case. It is inconceivable that Mellor did not know that the credit card information which she took from her customers belonged to them. Given her prior use of the skimming device, there is also ample reason to believe that Mellor knew that the counterfeit cards that she used to generate charge back transactions at Sears belonged to actual individuals who had been similarly scammed by her husband.

At the very least, Mellor has failed to carry her burden that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted her under § 1028A(a)(1). Schlup, 513 U.S. at 327-28. The court therefore concludes that Mellor's claim of actual innocence under Flores-Figueroa must be dismissed.

B.    Ineffective Assistance of Counsel

To prove that her counsel's representation was so defective as to require that her conviction be vacated, the petitioner must satisfy both prongs of the two-part standard articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). The petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To do so, the petitioner "must overcome the presumption that,

14

under the circumstances, the challenged action might be considered sound trial strategy." Id. at

689 (internal quotations omitted). It is clearly-established that counsel has no constitutional duty

to raise every non-frivolous issue or argument requested by a criminal defendant. Jones v.

Barnes, 463 U.S. 745, 754 (1983). Second, the petitioner must show that counsel's defective

performance resulted in prejudice; that is, she must demonstrate a "reasonable probability" that,

but for counsel's unreasonable errors, the outcome would have been different. Strickland, 466

U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in

the outcome." Id. If it is clear that the petitioner has not satisfied one prong of the Strickland test,

the court need not inquire whether he has satisfied the other prong. Id. at 697.

      1.      *Trial Counsel's Failure to Object to the Court's Calculation of "Victims"*
                   *for Purposes of U.S.S.G. § 2B1.1*

Mellor first claims that her trial counsel was unconstitutionally ineffective in failing to

object to the inclusion in the court's sentencing calculations of victims who had been reimbursed

by their financial institutions. Mellor argues that the four point enhancement that she received

under U.S.S.G. § 2B1.1(b)(2)(B) was improper because victims of identity theft who are

reimbursed should not be considered legal victims under the Sentencing Guidelines.

U.S.S.G. § 2B1.1(b)(2)(B) directs a sentencing court to enhance a defendant's sentence

by four points if the offense involves fifty or more victims. The term "victim" is defined for

purposes of this section as "any person who sustained any part of the actual loss." U.S.S.G. §

2B1.1 cmt. n.1. "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from

the offense." U.S.S.G. § 2B1.1 cmt. n. 3(A)(i). "Pecuniary harm" means "harm that is monetary

or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include

emotional distress, harm to reputation, or other non-economic harm." U.S.S.G. § 2B1.1 cmt. n. 3(A)(iii).

Because counsel is not accountable for unknown future changes in the law, the only cases relevant to the issue of whether Mellor's trial counsel was unconstitutionally ineffective are the decisions that were handed down before the date of Mellor's sentencing in February, 2008. See United States v. McNamara, 74 F.3d 514, 516-17 (4th Cir.1996) (an attorney's failure to anticipate a new rule of law is not constitutionally deficient). At the time of Mellor's sentencing, the caselaw on this issue was not at all clear. The only Circuit Courts that had confronted the issue did not agree whether reimbursed victims of identity theft could properly be considered victims under § 2B1.1 of the Guidelines. The Sixth and Eighth Circuits had held that they could not. United States v. Icaza, 492 F.3d 967, 969-70 (8th Cir. 2007); United States v. Yagar, 404 F.3d 967, 971 (6th Cir. 2005). The Eleventh Circuit had held that they could. United States v. Lee, 427 F.3d 881, 895 (11th Cir. 2005).[4] The Fourth Circuit had not—and still has not—weighed in on the issue.

Given the inconclusive array of legal authority at the time of Mellor's sentencing, counsel's failure to argue the § 2B1.1 issue does not fall foul of the Strickland standard. The Fourth Circuit has never held that the mere failure to cite favorable but non-binding decisional authority constitutes ineffective assistance of counsel. Indeed, as the Supreme Court has observed, "the Constitution guarantees criminal defendants only a fair trial and a competent

---

[4]Subsequent caselaw has only deepened the circuit split. Compare United States v. Kennedy, 554 F.3d 415, 419 (3d Cir. 2009) and United States v. Conner, 537 F.3d 480, 492 (5th Cir. 2008) (reimbursed individuals cannot be victims under § 2B1.1) with United States v. Panice, 598 F.3d 426, 433 (7th Cir. 2010), United States v. Stepanian, 570 F.3d 51, 55-56 (1st Cir. 2009), United States v. Pham, 545 F.3d 712, 718 (9th Cir. 2008), and United States v. Abiodun, 536 F.3d 162, 168 (2d Cir. 2008) (reimbursed account holders may be considered victims under § 2B1.1, especially if they suffered more than a momentary adverse effect from the theft).

attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." Engle v. Isaac, 456 U.S. 107, 133-34 (1982). See also Carrier, 477 U.S. at 535 (1986) ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default [on the ground of ineffective assistance of counsel.]"); Mikalajunas, 186 F.3d at 493.

In this case, Mellor faults her counsel for failing to rely upon decisions from outside the Fourth Circuit—none of which were binding upon the sentencing court. Clearly, however, counsel had no reason to believe that, if the Fourth Circuit had to decide the question, it would follow the reasoning of Icaza and Yagar instead of the rationale of Lee.[5] Nor could counsel safely predict that the application of the former cases would assist Mellor, because even the Yagar court had indicated that "there may be situations in which a person could be considered a 'victim' under the Guidelines even though he or she is ultimately reimbursed." 404 F.3d at 971.[6]

Because it was not clear that citing these non-binding cases would actually assist his client, the decision of Mellor's counsel not to object to the court's victim calculation under § 2B1.1 can only be viewed as a sound trial strategy. Strickland, 466 U.S. at 689. The Fourth Circuit has "repeatedly acknowledged the deference due to the strategic decisions made by trial counsel." Walton v. Angelone, 321 F.3d 442, 466 (4th Cir. 2003). In this case, if Mellor's counsel had contested the issue of whether the individual account holders were properly

---

[5]Indeed, the majority of subsequent decisions have rejected the reasoning of Icaza and Yagar. See supra note 4.

[6]Subsequent decisions have made the same concession. See, e.g., Conner, 537 F.3d at 491.

17

construed as victims for § 2B1.1 purposes, the government would have been able to introduce victim impact testimony from each of the forty-three individual account holders in order to show that they had suffered non-fleeting pecuniary harm. See Pham, 545 F.3d at 718; Yagar, 404 F.3d at 971-72. This evidence would likely have involved detailed testimony of the personal hardships suffered by each of the affected individuals as a consequence of Mellor's criminal conduct. As a result, Mellor's counsel was pursuing a reasonable strategy when he chose to forego reliance on non-binding decisions from other Circuit Courts in order to minimize the amount of prejudicial testimony entered against his client.

Because Mellor has failed to demonstrate that her counsel's failure to contest the court's victim calculation under § 2B1.1 was objectively unreasonable or motivated by anything other than a reasonable trial strategy, her claim that he was constitutionally ineffective must be dismissed. Strickland, 466 U.S. at 697.

2. *Ineffective Assistance of Appellate Counsel*

Mellor also argues that her appellate counsel was constitutionally ineffective inasmuch as he failed to contest on appeal the court's victim calculation under the Guidelines and failed to supplement his appellate brief after Flores-Figueroa was handed down by the Supreme Court.

Certainly, Mellor is entitled to constitutionally effective assistance of counsel in her direct appeal. Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, "appellate counsel is not required to raise an issue on appeal merely because it is not frivolous." Keel v. French, 162 F.3d 263, 272 (4th Cir. 1998). In fact, appellate counsel's decisions regarding which issues to argue on appeal are given significant deference when reviewed in a collateral proceeding. The Fourth Circuit is worth quoting at length on this score:

18

> In applying [the Strickland test] to claims of ineffective assistance of counsel on appeal . . . , reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir. 1989). Indeed, "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751); see also Smith, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims").

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc).

In light of this presumption, the court concludes that Mellor was not deprived of effective assistance on her appeal. First, the decision of Mellor's appellate counsel not to supplement his appellate brief to reflect an argument under Flores-Figueroa does not constitute ineffective assistance of counsel. Not only must the court presume that appellate counsel's decision was a proper strategic decision, see Pruett, 996 F.2d at 1568, but it is also evident that Flores-Figueroa would not have altered the outcome of the appeal. As explained above, the evidence is overwhelming that Mellor knew that the access device information that she stole belonged to other persons. Even if Mellor's counsel had argued this issue on appeal, therefore, there is not a "reasonable probability" that the Court would have found in her favor upon it. Strickland, 466 U.S. at 694. Consequently, Mellor was not unconstitutionally deprived of effective counsel with relation to any appellate argument under Flores-Figueroa.

Likewise, Mellor's appellate counsel was not constitutionally ineffective in failing to contest on appeal the sentencing court's victim calculations under § 2B1.1. The Fourth Circuit

still had not decided the issue by the time of Mellor's appeal, and the circuit split had only

deepened.[7] Moreover, trial counsel had not made any objection in the proceeding below. "If an

error is not properly preserved, appellate-court authority to remedy the error . . . is strictly

circumscribed." United States v. Massenburg, 564 F.3d 337, 342 (4th Cir. 2009) (quoting Puckett

v. United States, --- U.S. ----, 129 S. Ct. 1423, 1428 (2009)). It was, therefore, an acceptable

strategic decision for Mellor's appellate counsel to elect not to raise any argument under § 2B1.1

on appeal, in order to "avoid diverting the appellate court's attention from what he felt were

stronger claims." Smith v. South Carolina, 882 F.2d at 899. The court therefore concludes that

Mellor received effective assistance of counsel on appeal.

IV.    **Conclusion**

For these reasons, the court concludes that the motion to dismiss must be granted.

The petitioner is advised that she may appeal this decision pursuant to Rules 3 and 4 of

the Federal Rules of Appellate Procedure, if a judge of the circuit court of appeals or of this court

issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability

may issue only if the applicant has made a substantial showing of the denial of a constitutional

right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a

constitutional right." Therefore, this court declines to issue any certificate of appealability

pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell,

537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and

seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit,

her first step is to file a notice of appeal with this court within 60 days of the date of the entry of

---

[7] See supra note 4.

this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and to counsel of record for the government.

ENTER: This 8th day of September, 2010.

_____
Chief United States District Judge